OSCN Found Document:CHESAPEAKE OPERATING INC. v. KAST TRUST FARMS

OSCN navigation

Home

Courts

Court Dockets

Legal Research

Calendar

Help

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

CHESAPEAKE OPERATING INC. v. KAST TRUST FARMS2015 OK CIV APP 5Case Number: 109914: Consol. w/109916Decided: 10/16/2013Mandate Issued: 01/23/2015DIVISION IVTHE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 5, __ P.3d __

CHESAPEAKE OPERATING INC.,
Plaintiff/Appellant/Counter-Appellee,v.KAST TRUST FARMS,
Defendant/Appellee/Counter-Appellant.

APPEAL FROM THE DISTRICT COURT OF WASHITA COUNTY, OKLAHOMA
HONORABLE CHRISTOPHER S. KELLY, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH
DIRECTIONS

Bradley A. Gungoll, GUNGOLL, JACKSON, COLLINS, BOX & DEVOLL, P.C.,
Oklahoma City, Oklahoma, for Chesapeake Operating, Inc.Donelle H. Ratheal,
David W. Smith II, RATHEAL & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for
Kast Trust Farms

JERRY L. GOODMAN, JUDGE:
¶1 Chesapeake Operating Inc. (Chesapeake) appeals the trial court's August
30, 2011, order denying its motion for new trial or remittitur of a March 21,
2011, journal entry entered after jury trial under the Surface Damages Act, 52 O.S.2011, § 318.2 et seq.
Kast Trust Farms (Trust) also appeals the March 21, 2011, journal entry.1 Both parties
appeal a December 6, 2011, order granting Trust's motion for an attorney's fee
and costs. Based upon our review of the facts and applicable law, we reverse and
remand with directions.
FACTS
¶2 On October 16, 2009, Chesapeake sent via certified mail a notice of entry
letter to Trust, via Dr. Ronald George Wollmann (Dr. Wollmann), notifying it of
its intent to drill an oil and gas well on its property: the SW/4 Sec. 22,
T-11N, R-17W, Washita County, Oklahoma. Dr. Wollmann is the settler, trustee,
and sole beneficiary of the Trust. The body of the letter contained an error in
the location of the proposed well: it provided the well would be drilled and
operated approximately 200 feet from the South line and 990 feet from the East
line of the referenced section. However, it should have stated the "West line"
rather than the East Line. It further provided construction was estimated to
begin on or before October 30, 2009. The parties began negotiations regarding
damages to the surface.
¶3 On December 9, 2009, Chesapeake sent Trust a second letter with the
correct well location and an estimated construction date of December 21, 2009.
Dr. Wollmann expressed concerns regarding the location and environmental impact
of the drilling to the surface, noting a winery and vineyard were on the
property. Negotiations between the parties subsequently failed, and Chesapeake
filed a petition to appoint appraisers on March 11, 2010. Trust filed a
counterclaim on April 9, 2010, asserting a claim for treble damages.
¶4 Chesapeake subsequently notified Trust that it was moving the wellbore 20
feet from its original location. Chesapeake entered the property on March 15,
2010.
¶5 On May 5, 2010, the report of the appraisers was filed, finding the
diminution in value of the property to be $28,000.00. On June 8, 2010,
Chesapeake filed an exception, which it subsequently withdrew. Additional
pre-trial motions were filed by the parties including Trust's demand for jury
trial, which was ultimately held on January 25, 2011.2 The jury returned a verdict for Trust
in the amount of $86,750.00. A journal entry of judgment was entered on March
21, 2011.
¶6 On March 30, 2011, Chesapeake filed a motion for new trial or for
remittitur. By order filed on August 30, 2011, the court denied Chesapeake's
motion as well as Trust's request for treble damages. Trust subsequently filed a
motion for an attorney's fee and costs, which the court granted in the amount of
$45,000.00. Both parties appeal.
STANDARD OF REVIEW
¶7 A motion for new trial is addressed to the trial court's sound discretion
and will not be reversed on appeal unless it is apparent the trial court erred
on a pure question of law or acted arbitrarily. Barringer v. Baptist
Healthcare of OK, 2001 OK
29, ¶ 5, 22 P.3d 695, 698.
The appellate court indulges every presumption in favor of the trial court's
decision. Capshaw v. Gulf Ins. Co., 2005 OK 5, ¶ 7, 107 P.3d 595, 600.
¶8 We review the reasonableness of an attorney's fee award using the abuse of
discretion standard. However, the question of whether a fee is authorized by law
presents a question of law, which is reviewed de novo. In a de
novo review, this Court affords a "non-deferential, plenary and independent
review" of the trial court's legal ruling. Boston Ave. Mgmt., Inc. v.
Associated Res., Inc., 2007 OK
5, ¶ 10, 152 P.3d 880,
884-885.
ANALYSIS
I. Chesapeake's Appeal
¶9 On appeal, Chesapeake asserts several propositions of error, which will be
combined and addressed as follows.
¶10 First, Chesapeake asserts the trial court erred by admitting evidence of
personal nuisance-related damages immaterial to the property's diminution in
value.
¶11 The Surface Damage Act (Act), 52 O.S.2011, § 318.2 et seq.,
permits the recovery of damages "which the surface owner has sustained or will
sustain by reason of entry upon the land and by reason of drilling or
maintenance of oil or gas production on the land." Ward Petroleum Corp. v.
Stewart, 2003 OK 11, ¶ 6, 64 P.3d 1113, 1115 (citing 52 O.S.2001, § 318.5(C)). The damage
standard under the Act is the "diminution in the fair market value of the
surface property resulting from the drilling and maintenance operations."
Id., at ¶ 6, 64 P.3d at 1115 (citing Davis Oil Co. v. Cloud, 1986 OK 73, ¶ 22, 766 P.2d 1347, 1352). This measure
of damages is appropriate because the action "partakes of the nature of a
condemnation action by virtue of 52
O.S. § 318.5(F), which provides that a trial under the Act shall be
conducted and judgment entered in the same manner as railroad condemnation
cases." Ward, 2003 OK 11,
at ¶ 6, 64 P.3d at 1115. See also Dyco Petroleum Corp. v. Smith, 1989 OK 51, 771 P.2d 1106 (an action
under the Act clearly partakes of the nature of a condemnation action).
¶12 In Davis, the Oklahoma Supreme Court identified factors a jury may
consider in determining damages under the Act:

1. The location or site of the drilling operation;2. The quality and
value of the land used or disturbed by said drilling operations;3.
Incidental features resulting from said drilling operations which may affect
convenient use and further enjoyment;4. Inconvenience suffered in the
actual use of the land by operator;5. Whether the damages, if any, are
temporary or permanent in nature;6. Changes in physical condition of the
tract;7. Irregularity of shape and reduction, or denial, of access;
and8. The destruction, if any, of native grasses, and/or growing crops,
if any, caused by drilling operation.
However, evidence relating to these factors may be considered only as it
affects the fair market value of the land.
Id., at ¶ 22, 766 P.2d at 1352.
¶13 Accordingly, a jury may consider the personal inconvenience suffered by a
surface owner. However, personal inconvenience is not an additional or separate
element of damages and may only be considered insofar as it affects the fair
market value of the surface estate. Id., at ¶ 24, 766 P.2d at 1353.
Purely personal inconvenience is not compensable under the Act. Dyco, 1989 OK 51, at ¶ 9, 771 P.2d at
1008.
¶14 The record provides Dr. Wollmann testified to various elements of
personal inconvenience including truck traffic, noise, and dust. Chesapeake
objected. The trial court denied the objections and permitted the testimony. The
court subsequently, and properly, instructed the jury that it may consider the
Davis factors, including personal inconvenience, but only as it affects
the fair market value of the surface estate. We find no error. There is no
indication in the record that the jury awarded purely personal nuisance-related
damages. Accordingly, this assertion of error is denied.
¶15 For its next proposition of error on appeal, Chesapeake asserts the trial
court erred in two (2) evidentiary related matters: the admission of Trust's
expert appraiser Rene Bagley's redacted report and her testimony regarding the
same. Chesapeake notes the court granted its motion in limine, excluding
evidence relating to animal feeding operations. Chesapeake contends that even
though the court redacted this material from her expert report, Bagley relied on
the material in arriving at her ultimate valuation of the property. Thus, her
report and testimony were the product of incompetent evidence and should have
been excluded. Further, Chesapeake asserts the admission of the report was error
because the evidence and methodology she used was irrelevant, misleading,
unreliable, and violated Daubert v. Merrell Dow Pharm, Inc., 509 U.S. 579
(1993), and Christian v. Gray, 2003 OK 10, 65 P.3d 591.
¶16 Trust disagrees, noting Chesapeake did not raise the Daubert
argument until after trial and therefore waived any error on appeal. In
addition, Trust asserts Bagley provided a thorough, carefully written valuation
of the surface, noting its special uses, size, and location of the well site in
relation to the home site. Thus, the court correctly admitted Bagley's redacted
report and testimony.
¶17 Trial court decisions concerning admission of evidence are reviewed on
appeal pursuant to an abuse of discretion standard. Myers v. Missouri Pac. R.
Co., 2002 OK 60, ¶ 36, 52 P.3d 1014, 1033. In addition,
Daubert creates a gate keeping function for the trial court regarding the
admission of an expert's evidence, when challenged. It does not enable a party
to allow the expert's testimony to be admitted and then attempt to discredit
that testimony on Daubert grounds after all the evidence is in. The
function of this Court is to correct demonstrated error. "Unless there is
presentation of the question to the trial court and a subsequent erroneous
determination of that question, there is no error to correct on appeal."
Marlin Oil Corp. v. Barby Energy Corp., 2002 OK CIV APP 92, ¶ 8, 55 P.3d 446, 449. By failing to
raise a timely Daubert objection to the purported objectionable testimony
during trial, Chesapeake waived the error on appeal, in the absence of
fundamental error. See Covel, Ind. and as Rep. of the Estate of H.K. Covel,
Deceased, v. Rodriquez, et al., 2012 OK 5, 272 P.3d 705.
¶18 Upon our review of the record, we find no fundamental error. Bagley's
testimony was not so manifestly unreasonable that its admission constituted
fundamental error. Furthermore, we find no abuse of discretion in the admission
of Bagley's redacted report and testimony. The trial court properly redacted
those portions of the report consistent with its rulings and prohibited her from
testifying to animal feeding operations. This proposition of error is therefore
denied.
¶19 Chesapeake further asserts the trial court erred by refusing evidence
concerning Trust's relationship to Dr. Wollmann. Chesapeake contends Dr.
Wollmann is a tenant at will pursuant to 41 O.S.2011, § 1 and is therefore
not entitled to compensation.
¶20 We reject this assertion of error. Dr. Wollmann is the grantor, sole
trustee, and beneficiary of the Trust. Although Trust owns legal title to the
real property, the beneficiary owns equitable title. Panama Processes, SA v.
Cities Serv. Co., 1990 OK 66,
¶ 35, 796 P.2d 276, 290. Thus,
Dr. Wollmann is not a tenant at will.
¶21 For its next proposition of error, Chesapeake asserts the trial court
erred by excluding evidence of previous voluntary transactions between the
parties concerning the same or similarly situated property.
¶22 Comparable sales prior to the date of taking are admissible and are often
used to aid a fact-finder in determining value. See Oklahoma Transp. Auth. v.
George Abdo Trust, 2006 OK CIV
APP 11, 130 P.3d 751. "[T]he
value of land or interest in realty at a particular time may as a general rule
be proved by evidence of voluntary sales of similar property in the vicinity
made at or about the same time." Coogan v. Arkla Expl.Co., 1979 OK 6, ¶ 12, 589 P.2d 1061, 1063. If a landowner
can show that a sale of land was voluntary, it does not per se taint the
sale simply because the party who purchased the land had the power of
condemnation. At most, it simply raises a rebuttable presumption with the burden
on the landowner to show a voluntary sale. However, "the amount of money
[another landowner] had received from the [condemner] for settling his claim
against the [condemner], was incompetent and inadmissible." Oklahoma Turnpike
Auth. v. Deal, 1965 OK
57, ¶ 19, 401 P.2d 508,
512
¶23 The admission of this evidence is a matter left largely to the discretion
of the trial court, and unless that discretion is abused, the court's ruling
will not be disturbed. State of Okla. ex rel. Dept. of Transp. v. Little,
2004 OK 74, ¶ 11, 100 P.3d 707, 712.
¶24 In the present case, the trial court granted Trust's motion to exclude
evidence of voluntary transactions between the parties on the same and similarly
situated properties. However, it clarified its ruling to permit Chesapeake to
reference the prior transactions if its expert had utilized them in arriving at
his appraisal figure. Because Chesapeake's expert did not utilize the prior
transactions in arriving at his diminution in value figure, Chesapeake was
precluded from introducing this evidence at trial. We find no abuse of
discretion and deny this assertion of error.
¶25 Next, Chesapeake contends the trial court erred by giving instructions 5,
11, and 12. The test for error in instructions is whether the jurors were
probably misled, thereby reaching a different conclusion than they would have
reached but for the questioned instructions. Mitchell v. Griffin Television,
L.L.C., 2002 OK CIV APP 115,
¶ 33, 60 P.3d 1058, 1067. A
verdict will not be disturbed on appeal where, as a whole, it appears that the
instructions fairly represent the law applicable to the issues presented by the
pleadings and the evidence. Smith v. U.S. Gypsum Co., 1980 OK 33, ¶ 24, 612 P.2d 251, 256.
¶26 Instruction 5 states:
TEMPORARY OR PERMANENT INJURY TO LAND

You are advised that damages to property can be either temporary or
permanent in nature.
Temporary damages are those damages which are of a temporary character
and which can be corrected. The measure of damages for temporary damages to
land would be the cost to restore the land to its former condition, but only
if this cost is less than the diminution (decrease) in fair market value of
the land. Where oil and gas drilling operations result in temporary damage
to land, and the cost to restore the land is greater than the loss in value,
then the diminution (decrease) in value is the correct measure of
damages.
Permanent damages are those damages which are of a permanent character
and which cannot be corrected. The measure of recovery for such damages is
the diminution (decrease) in value of the land.
There may be temporary damage to one part of a parcel and permanent
damage to another part and it is proper to allow recovery for both. However,
no double recovery is allowed for the same injury. In other words, both
temporary and permanent damages may be recovered in the same action but it
is improper to allow a double recovery for the same item of
damage.
¶27 Chesapeake asserts this instruction is misleading, confusing, and
prejudicial because no evidence of temporary or permanent injury to land was
introduced and the instruction fails to state that an award of damages, whether
temporary or permanent, cannot exceed the total diminution in value. Trust
disagrees, asserting the instruction is proper and evidence of temporary and
permanent injury was presented to the jury.
¶28 Upon reviewing this instruction, we find it adequately instructs the jury
on the law. Further, the record provides evidence of temporary and permanent
injury was presented to the jury for its consideration. Thus, we find no
error.
¶29 Instruction 11 states:

FACTORS WHICH MAY BE CONSIDERED IN DETERMINING FAIR MARKET VALUE AFTER
ENTRY UPON THE LAND FOR THE PURPOSES OF THE DRILLING AND MAINTENANCE OF THE
SUBJECT WELL
In determining the fair market value of the surface property after
Chesapeake's entry upon the land you may only consider factors and evidence
which have an effect upon the value of the property in the assessment of
damages. Factors which you may consider in determining damages include, but
are not limited to, the following, if shown by a preponderance of the
evidence (i.e., greater weight of the evidence):
a) The location or site of the drilling operation.
b) The quality and value of the land used or disturbed by said drilling
operations.
c) Incidental features resulting from said drilling operations which may
affect convenient use and further enjoyment.
d) Inconvenience suffered in the actual use of the land by
Chesapeake.
e) Whether the damages, if any, are temporary or permanent in nature.
f) Changes in physical condition of the tract.
g) Irregularity of shape and reduction, or denial, of access.
h) The destruction, if any, of native grasses, and/or growing crops, if
any, caused by drilling operations.
These are not to be considered as individual items of damages, but as
they may, in your opinion, affect the fair market value of the tract after
the drilling operations in this case.
¶30 Chesapeake contends this instruction fails to instruct the jury that
double recovery is prohibited and that the sum total of all damages awarded
cannot exceed the total diminution of value.
¶31 We find no error. Instruction 11 provides the listed factors are merely
factors for the jury to consider and are not individual items of damages. In
addition, the jury was previously instructed that double recovery was prohibited
and that damages cannot exceed the total diminution of the property. See CNA
Ins. Co. v. Krueger, Inc., of Tulsa, 1997 OK 142, ¶ 15, 949 P.2d 676, 679 ("In reviewing the
propriety of given instructions, the instructions are to be viewed in whole
rather than separately.") Thus, we find no error in this Instruction.
¶32 Instruction 12 states:
STIGMA

In considering the fair market value of the surface property after
Chesapeake's entry upon the land, you may consider the stigma caused from
having the Kast Trust # 1-22H Well on the property. Stigma refers to the
lack of input afforded to the landowner in designating the location of the
well site and the perceived limitations of the use of the property caused by
the location of the well.
¶33 Chesapeake contends the court erroneously instructed the jury to consider
stigma as an item of damage contrary to Davis, 1986 OK 73, 766 P.2d 1347. Trust disagrees,
asserting stigma is an appropriate factor to consider, citing Chesapeake
Operating, Inc. v. Loomis, 2007
OK CIV APP 55, 164 P.3d
254.
¶34 The damage standard intended by the Legislature under the Act is the
diminution in value of the entire property which the appraisers may assess by
considering the factors set forth in Davis. See also J.C. Houck
v. Hold Oil Corp., 1993 OK
166, 867 P.2d 451 (the proper
measure of damages under the Act is the difference in the fair market value of
the entire tract immediately before the drilling operations and the fair market
value of the tract immediately after the drilling operations)(superseded by
statute). As previously stated, the Court in Davis approved an
instruction that listed factors a jury may consider in arriving at the
diminution in value of the property. These factors are not separate items of
damage, but may be considered solely as they have an effect upon the
diminishment in value of the surface estate before and after drilling
operations. Davis, 1986 OK 73, at
¶ 23, 766 P.2d at 1352; J.C. Houck, 1993 OK 166, at ¶ 41, 867 P.2d at
462.
¶35 We agree with Chesapeake that the trial court erroneously instructed the
jury on stigma. The Davis factors do not permit consideration of stigma
and its affect upon the diminishment in value of the surface estate. In
addition, a plain reading of Instruction 12 provides the court instructed the
jury there was stigma associated with the well on Trust's property, removing any
discretion from the jury.
¶36 Accordingly, we find Instruction 12 was an error of law and it appears
reasonably certain that the jury was misled by it. The jury returned a verdict
determining the diminution in value of the property to be $86,750.00. This
amount was $58,750.00 more than the appraisal submitted by the court-appointed
appraisers and $16,550.00 more than Trust's own expert's appraisal of
$70,200.00. Thus, the jury's verdict cannot stand. The trial court should have
granted Chesapeake's motion for new trial. The trial court's judgment is
reversed and the matter is remanded for a new trial.
¶37 Chesapeake further asserts the trial court erred by requiring it to
present its evidence first at trial despite Trust having the burden of proof, in
contravention to 12 O.S.2011, §
577, and in the introduction of over 70 red-hued photographs. Although this
Court finds the previous error dispositive, we examine these allegations of
error and find merit to Chesapeake's assertions.
¶38 Although Trust acknowledges it bears the ultimate burden of proof at
trial, i.e., proving the land taken is worth more than the appraisers'
valuation, it disagrees the court erred, asserting the trial court acted within
its discretion regarding the order of evidence and that Chesapeake was not
prejudiced by the court's action.
¶39 Title 12 O.S.2011, § 577
prescribes the order of a jury trial. Section 577 provides, in relevant
part:

When the jury has been sworn, the trial shall proceed in the
following order, unless the court for special reasons otherwise directs:
.
Third. The party on whom rests the burden of the issues must first
produce his evidence; after he has closed his evidence the adverse party may
interpose and file a demurrer thereto, upon the ground that no cause of
action or defense is proved. If the court shall sustain the demurrer, such
judgment shall be rendered for the party demurring as the state of the
pleadings or the proof shall demand. If the demurrer be overruled, the
adverse party will then produce his evidence. . (Emphasis added).3
See also Lierly v. Tidewater Pet. Corp., 2006 OK 47, ¶ 27, 139 P.3d 897, 905 ("After the jury
has been sworn, the order, in summary, includes statements of the case first by
the party with the burden of proof and then the adverse party; presentation of
the evidence first by the party with the burden of proof and then the adverse
party; instructions to the jury; and arguments to the jury first by the party
with the burden of proof and then the adverse party"). Section 577 makes the
prescribed order of trial mandatory on the trial judge unless the court
authorizes a change upon a "special reason." Id., at ¶ 28, 139 P.3d at
905.
¶40 In the present case, the court addressed the order of presentation of
evidence prior to trial. The court noted the burden of proof was on Trust. Trust
requested Chesapeake present first because it was listed as "plaintiff" and it
did not want to confuse the jury. Chesapeake disagreed, asserting the jury would
not be confused by the labels "plaintiff" and "defendant" and that Trust should
proceed first to see if it met its ultimate burden. The court disagreed, stating
Chesapeake would present its case first: "[I] don't want to mess up the way in
which this is set out. I understand who may have the burden and who doesn't, but
we're going to proceed with Chesapeake as plaintiff and [Trust] as the defendant
and [Chesapeake will go first.]"
¶41 Section 577 clearly prescribes the order in which a trial shall proceed
unless the trial court, for special reasons, directs otherwise. In the present
case, the court did not provide a special reason for changing the prescribed
order of trial other than stating it did not wish to "mess up the way in which
[it was] set out." This is an insufficient "special reason" and was error. Upon
remand, the court is instructed to comply with § 577.
¶42 With respect to the photographs, Chesapeake asserts the court erred by
permitting over seventy (70) red-hued photographs of the property taken from
March through December of 2010 into evidence, asserting they have no probative
value and were exceptionally prejudicial given their striking red color. Trust
disagrees, asserting any change in color was due to the conversion of the
photographs from the original format to pdf format and any error in their
admission was harmless.
¶43 The Oklahoma Evidence Code, 12
O.S.2011, § 2101 et seq., allows all relevant evidence to be admitted
unless excluded by rules of evidence. Title 12 O.S.2011, § 2401 defines
"relevant evidence" as "evidence having any tendency to make the existence of
any fact that is of consequence to the determination of the action more probable
or less probable than it would be without the evidence." However, relevant
evidence may be excluded "if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of issues, misleading the jury, undue
delay, needless presentation of cumulative evidence, or unfair and harmful
surprise." 12 O.S.2011, § 2403.
The court must seek a balance of probative value and potential prejudice on the
facts of each case. "The injection of irrelevant or otherwise inadmissible
evidence is ordinarily not grounds to reverse a jury verdict unless that error
was prejudicial." James v. Midkiff, 1994 OK CIV APP 165, ¶ 6, 888 P.2d 5, 6 (citing 12 O.S. § 78; Karriman v.
Orthopedic Clinic, 1973 OK
141, 516 P.2d 534). "The test
of prejudice is the likelihood the verdict would have been different had the
error not occurred measured by the usual criterion of the verdict's support in
the evidence." Id. at ¶ 6, 888 P.2d at 6 (citing Karriman, 1994 OK CIV APP 165, at ¶ 6, 516
P.2d at 540). Finally, "the admission of photographs in evidence as an aid to
the jury is a matter addressed to the sound discretion of the trial court."
Booth Tank Co., 1964 OK
160, ¶ 16, 394 P.2d 493,
497.
¶44 In the present case, Chesapeake cross-examined Dr. Wollmann who admitted
the photographs were not representative of the property, i.e., that the
red hue was the result of conversion to a pdf format. Because the photographs
were not representative of the property and were clearly cumulative, we find the
trial court abused its discretion by admitting them.
II. Trust's Counter-Appeal
¶45 For its appeal, Trust asserts the trial court erred in denying its
counterclaim for treble damages.
¶46 Title 52 O.S.2011, § 318.9
provides for treble damages:

Upon presentation of clear, cogent and convincing evidence that the
operator willfully and knowingly entered upon the premises for the purpose
of commencing the drilling of a well before giving notice of such entry or
without the agreement of the surface owner, the court may, in a separate
action, award treble damages. The issue of noncompliance shall be a fact
question, determinable without jury, and a de novo issue in the event of
appeal.
Any operator who willfully and knowingly fails to keep posted the
required bond or who fails to notify the surface owner, prior to entering,
or fails to come to an agreement and does not ask the court for appraisers,
shall pay, at the direction of the court, treble damages to the surface
owner. .
The burden of proof under § 318.9 is on the party attempting to recover
damages. Houck, 1993 OK
166, at ¶ 24, 867 P.2d at 458-59. The party must show not only a violation
of § 318.9, but also that the violation was willful on the part of the operator.
Id. Appellate review of the trial court's determination is de
novo, according no weight to lower tribunal's determination of the issue.
Id. at ¶ 23, 867 P.2d at 458.
¶47 In support of its claim for treble damages, Trust asserts Chesapeake
failed to provide it with the required statutory notice and follow its own
"approximate dates" for entering the land. The record provides on October 16,
2009, Chesapeake issued its first letter, via certified mail, to Dr. Wollmann,
trustee, of its intent to enter the surface and drill a well site on or before
October 30, 2009. The letter contained an incorrect legal description for the
surface. In October of 2009, the parties began negotiations regarding damages to
the surface. Other than the initial inadvertent legal error in the October 16,
2009, letter, the record provides the parties always referred to the correct
legal description in their negotiations with each other. On December 9, 2009,
Chesapeake issued a second letter to Dr. Wollmann notifying him of its intent to
enter and drill on or about December 21, 2009. The letter contained the correct
legal description for the surface, although it was not sent via certified mail.
Negotiations were terminated on March 10, 2010, and Chesapeake's petition to
appoint appraisers was filed on March 11, 2010. On March 15, 2010, Chesapeake
entered the site. On April 9, 2010, Trust filed a counterclaim, seeking treble
damages. Finally, on April 16 and May 12, 2012, Chesapeake sent, via certified
mail, two (2) letters changing the location and/or drilling date of the well
bore.
¶48 As we view this evidence under the de novo standard, we do not
believe there is clear, cogent, and convincing evidence that Trust met its
burden to prove Chesapeake willfully and knowingly entered the premises for the
purpose of commencing the drilling of a well before giving Trust notice.
Although the initial notice contained an incorrect legal description for the
surface, the record provides this error was corrected and that Dr. Wollmann had
notice of the correct description throughout negotiations. Further, we do not
believe the failure to send the second notice by certified mail is sufficient to
satisfy § 318.9's requirements for treble damages. Accordingly, we affirm the
trial court's March 21, 2011, order denying Trust treble damages.
III. An Attorney's Fee and Costs
¶49 Both parties appeal the court's award of fees and cost to Trust. Because
the matter is remanded to the trial court for a new trial, the December 6, 2011,
order granting fees and costs to Trust is reversed.

¶50 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH
DIRECTIONS.

THORNBRUGH, P.J., concurs, and RAPP, J., concurs in part and dissents in
part.

RAPP, J., concurring in part and dissenting in part:
¶1 I concur in the Majority's decision regarding Chesapeake's appeal. I
dissent to the Majority's decision in the Trust's counter-appeal.

FOOTNOTES

1 By
order filed on September 30, 2011, the Oklahoma Supreme Court ordered case No.
109,914 and No. 109,916 to be consolidated under surviving case No.
109,914.

2
Pursuant to 52 O.S.2011, §
318.5(F), "Either party may ... file with the clerk a written demand for a
trial by jury, in which case the amount of damages shall be assessed by a
jury."

3 Unless
contrary to clear legislative intent, the word "shall" in a statute signifies a
mandatory command rather than a permissive directive. Keating v.
Edmondson, 2001 OK 110, ¶
13, 37 P.3d 882,
888.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Civil Appeals Cases
 CiteNameLevel

 1994 OK CIV APP 165, 888 P.2d 5, 66 OBJ 117, James v. MidkiffDiscussed at Length
 2002 OK CIV APP 92, 55 P.3d 446, MARLIN OIL CO. v. BARBY ENERGY CORP.Discussed
 2002 OK CIV APP 115, 60 P.3d 1058, MITCHELL v. GRIFFIN TELEVISION, L.L.C.Discussed
 2006 OK CIV APP 11, 130 P.3d 751, OKLAHOMA TRANSPORTATION AUTHORITY v. THE GEORGE ABDO TRUSTDiscussed
 2007 OK CIV APP 55, 164 P.3d 254, CHESAPEAKE OPERATING, INC. v. LOOMISDiscussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1986 OK 73, 766 P.2d 1347, 57 OBJ 2885, Davis Oil Co. v. CloudDiscussed at Length
 1989 OK 51, 771 P.2d 1006, 60 OBJ 900, Dyco Petroleum Corp. v. SmithDiscussed
 1990 OK 66, 796 P.2d 276, 61 OBJ 1934, Panama Processes, S.A. v. Cities Service Co.Discussed
 1993 OK 166, 867 P.2d 451, 65 OBJ 23, Houck v. Hold Oil Corp.Discussed at Length
 2001 OK 29, 22 P.3d 695, 72 OBJ 1046, BARRINGER v. BAPTIST HEALTHCARE OF OKLAHOMADiscussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSONDiscussed
 1964 OK 160, 394 P.2d 493, BOOTH TANK CO. v. SYMESDiscussed
 1965 OK 57, 401 P.2d 508, OKLAHOMA TURNPIKE AUTHORITY v. DEALDiscussed
 2002 OK 60, 52 P.3d 1014, MYERS v. MISSOURI PACIFIC RAILROAD CO.Discussed
 1973 OK 141, 516 P.2d 534, KARRIMAN v. ORTHOPEDIC CLINICDiscussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAYDiscussed
 2003 OK 11, 64 P.3d 1113, WARD PETROLEUM CORP. v. STEWARTDiscussed at Length
 2004 OK 74, 100 P.3d 707, STATE ex rel. DEPT OF TRANSPORTATION v. LITTLEDiscussed
 2005 OK 5, 107 P.3d 595, CAPSHAW v. GULF INSURANCE COMPANYDiscussed
 2006 OK 47, 139 P.3d 897, LIERLY v. TIDEWATER PETROLEUM CORPORATIONDiscussed
 2007 OK 5, 152 P.3d 880, BOSTON AVENUE MANAGEMENT, INC. v. ASSOCIATED RESOURCES, INC.Discussed
 2012 OK 5, 272 P.3d 705, COVEL v. RODRIGUEZDiscussed
 1980 OK 33, 612 P.2d 251, Smith v. U.S. Gypsum Co.Discussed
 1979 OK 6, 589 P.2d 1061, COOGAN v. ARKLA EXPLORATION CO.Discussed
 1997 OK 142, 949 P.2d 676, 68 OBJ 3827, CNA INSURANCE CO. v. KRUEGER, INC.Discussed
Title 12. Civil Procedure
 CiteNameLevel

 12 O.S. 78, Court to Disregard Insignificant ErrorsCited
 12 O.S. 577, Trial OrderDiscussed
 12 O.S. 2101, Short TitleCited
 12 O.S. 2401, Relevant Evidence DefinedCited
 12 O.S. 2403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Cumulative Nature of EvidenceCited
Title 41. Landlord and Tenant
 CiteNameLevel

 41 O.S. 1, Presumption of Tenant at WillCited
Title 52. Oil and Gas
 CiteNameLevel

 52 O.S. 318.2, DefinitionsDiscussed
 52 O.S. 318.5, Negotiating Surface Damages - Appraisers - Report and Exceptions Thereto - Jury TrialDiscussed at Length
 52 O.S. 318.9, Violation of Act - DamagesCited